IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JASPER N. MCDONALD SR., *Plaintiff* | § § § | |
| | § | SA-22-CV-01380-XR |
| -vs- | § § | |
| 81ST JUDICIAL DISTRICT OFFICE, AUDREY GOSSETT LOUIS, ROLAND TREVINO, *Defendants* | § § § § | |

## ORDER

On this date, the Court considered Defendants' motion to dismiss this § 1983 action (ECF No. 17), Plaintiff's response (ECF No. 22), and Defendants' reply (ECF No. 24). After careful consideration, Defendants' motion is **GRANTED.**

## BACKGROUND

Plaintiff alleges that on or about December 20, 2020, he was offered a position as a Lieutenant with the Wilson County Sheriff's Department ("WCSD"). ECF No. 15, First Amended Complaint ("FAC") ¶ 8. According to Plaintiff, "[he] accepted the Lieutenant position and assisted Sheriff Stewart with his Criminal Investigations Division interview board and ordering of badges." *Id.* ¶ 10. A week later, however, before Plaintiff formally began his employment, Defendant Audrey Louis, the District Attorney of the 81st District of Texas, contacted WCSD and reported that Plaintiff had previously been charged with Deadly Conduct during an earlier period of employment with WCSD. *Id.* ¶ 11.

Plaintiff alleges that Louis was involved in his prosecution as an Assistant District Attorney in 2008.[1] Defendant Roland Trevino is an Investigator with the District Attorney's Office. Plaintiff

---

[1] Defendants dispute any involvement in this case. However, at this stage, the Court accepts as true all well plead allegations in Plaintiff's First Amended Complaint.

alleges that both Louis and Trevino were aware of an Order of Expunction following Plaintiff's acquittal, which required all parties with case records in their possession to return, delete, or destroy those records. *Id.* ¶ 11. According to Plaintiff, Trevino, at the direction of Louis, nonetheless secured copies of the arrest and grand jury records and gave them to WCSD to prevent Plaintiff's re-hiring by WCSD. *Id.* Moreover, Defendants allegedly informed WCSD that Plaintiff was on a *Brady* list.[2] *Id.* ¶ 14. However, Plaintiff insists that he was never placed on a *Brady* list. *Id.*

Based on Louis's intervention, Plaintiff alleges that WCSD determined that Defendants would be unwilling to call Plaintiff as a witness in any future criminal proceedings, rendering his employment with WCSD untenable. *Id.* ¶¶ 10–12. WCSD told Plaintiff that "he would not be hired after all." *Id.* ¶ 12.

Thereafter, Plaintiff sought employment with the Texas Southwestern Cattle Rangers Association ("TSCRA"). *Id.* ¶ 15. Plaintiff alleges that Defendants forwarded the same purported *Brady* material to TSCRA and again reported that he was on a *Brady* list. *Id.* ¶¶ 15–16. According to Plaintiff, it was Trevino who advised Louis of Plaintiff's prospective employment with TSCRA. *Id.* ¶ 15. Plaintiff further alleges that although he "was practically hired," TSCRA revoked his offer of employment because of Defendants' intervention. *Id.* ¶ 16.

Plaintiff initiated this action against Louis and Trevino, in their individual and official capacities, and against the District Attorney's Office,[3] under 42 U.S.C. § 1983, alleging

---

[2] During the status conference held on October 31, 2023, Defendants described this as a listing of law enforcement officers whose credibility was such that the District Attorney's Office determined that disclosure to a future criminal defendant was necessary for the District Attorney's Office to comply with its obligations under *Brady v. Maryland*, 373 U.S. 83, 86 (1963), and its progeny.

[3] In this Order, the Court treats Plaintiff's claims against Louis in her official capacity and the District Attorney's Office as one and the same. *See Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000) ("In any case in which a defendant government official is sued in his individual and official capacity, and the city or state is also sued, there potentially exists an overlapping cause of action. The official-capacity claims and the claims against the governmental entity essentially merge.").

2

deprivations of his due process and equal protection rights under the Fourteenth Amendment of the U.S. Constitution. *See* FAC.[4]

Defendants move to dismiss this action, arguing that Plaintiff's has failed to state a viable deprivation of his due process and equal protection rights under the Fourteenth Amendment and that his claims are variously barred by the Eleventh Amendment, absolute prosecutorial immunity, and qualified immunity. *See* ECF No. 17. Because the Court concludes that Eleventh Amendment immunity bars Plaintiff's claims and the FAC fails to state a plausible claim for violations of Plaintiff's Fourteenth Amendment rights on its face, it declines to reach the question of prosecutorial immunity and qualified immunity presented in Defendants' motion.

## LEGAL STANDARD

### I. Rule 12(b)(1)[5]

Dismissal is proper under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on a motion under Rule 12(b)(1), the Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). "Because at issue in a factual

---

[4] The FAC, filed in response to Defendants' first motion to dismiss (ECF No. 9), drops the claims under 18 U.S.C. § 241, 18 U.S.C. § 242, and 42 U.S.C. § 14141 alleged in his original complaint (ECF No. 1).

[5] While the United States Supreme Court has not yet addressed whether Eleventh Amendment immunity is a Rule 12(b)(6) or Rule 12(b)(1) question, the Fifth Circuit has held the Eleventh Amendment creates restrictions on a court's subject matter jurisdiction. *Sabine Pipe Line, LLC v. A Permanent Easement of 4.25 +/- Acres of Land in Orange Cnty., Texas*, 327 F.R.D. 131, 137 (E.D. Tex. 2017); *see United States v. Texas Tech Univ.*, 171 F.3d 279, 286 (5th Cir. 1999). For this reason, the Fifth Circuit requires the Eleventh Amendment immunity question to be addressed before proceeding to the merits of Plaintiff's claims. *Texas Tech Univ.*, 171 F.3d at 286. Accordingly, the Court will construe the District Attorney's assertion of Eleventh Amendment immunity as a challenge to subject matter jurisdiction properly reviewed under the Rule 12(b)(1) standard.

12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). In short, no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 413. Further, materials such as affidavits and regulations can be considered when relevant to the issue of jurisdiction. *Poindexter v. United States*, 777 F.2d 231 (5th Cir. 1985).

### II.     Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must

contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## ANALYSIS

### I.   Rule 12(b)(1) – Eleventh Amendment Immunity

Defendants argue that Plaintiff's official capacity claims against them are barred by the Eleventh Amendment. ECF No. 17 at 3. In contrast, Plaintiff argues—citing *Crane v. Texas*, 766 F.2d 193, 194 (5th Cir. 1985)—that district attorneys are properly viewed as county officials, not state officials, and that the Eleventh Amendment does not bar Plaintiff's claims. ECF No. 22 at 5.

Generally, the Eleventh Amendment will bar suits against government officials in their official capacity where that official acts on behalf of the state government, not local government. *See Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009). "The issue [of] whether an individual defendant acts on behalf of the state or the local government is determined by state law and by

analysis of the duties alleged to have caused the constitutional violation." *Zinter v. Salvaggio*, No. SA-18-CV-00680-JKP, 2021 WL 1381231, at *4 (W.D. Tex. Apr. 12, 2021) (citing *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997)).

Where a prosecutor acts within the scope of her prosecutorial capacity as an advocate for the state, prosecutors in Texas act on behalf of the state and thus are entitled to absolute immunity under the Eleventh Amendment. *See Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009) ("This circuit has stated on numerous occasions that district attorneys and assistant district attorneys in Texas are agents of the state when acting in their prosecutorial capacities."); *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) ("As a state officer acting in her official capacity, however, Brock is protected by the eleventh amendment from suit under section 1983 for money damages."); *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir.1995) (holding that the actions of a Texas district attorney within the scope of his prosecutorial function during a criminal proceeding do not constitute official policy for which a county can be held liable); *Harris v. Arteaga,* No. SA-21-CV-00612-XR, 2021 U.S. Dist. LEXIS 142263, at *10-11 (W.D. Tex. July 30, 2021) ("The Fifth Circuit has stated on numerous occasions that district attorneys and assistant district attorneys in Texas are agents of the state when acting in their prosecutorial capacities."); *Spikes v. Phelps*, 131 F. App'x 47, 49 n.1 (5th Cir. 2005) ("Texas district attorneys are shielded by Eleventh Amendment immunity for acts performed as state officers in the scope of criminal prosecution, but they are not so shielded when they act with respect to local policies."). [6]

---

[6] Generally, where a government official is sued in her official capacity, the Fifth Circuit considers six factors in assessing whether Eleventh Amendment immunity is proper:

> 1. Whether the state statutes and case law view the agency as an arm of the state; 2. The source of the entity's funding; 3. The entity's degree of local autonomy; 4. Whether the entity is concerned primarily with local as opposed to statewide problems; 5. Whether the entity has the authority to sue and be sued in its own name; and 6. Whether the entity has the right to hold and use property.

However, where a prosecutor acts outside of her prosecutorial capacity, that prosecutor may be treated as a county official not entitled to Eleventh Amendment immunity in some circumstances. *Krueger,* 66 F.3d at 77 ("If a district attorney exceeds the scope of his prosecutorial duties, a county may be held liable under certain limited circumstances."). Indeed, Plaintiff attempts to dissuade the Court from holding that Trevino and Louis acted on behalf of the state by invoking *Crane*, 766 F.2d at 194. In *Crane*, the Fifth Circuit addressed whether a district attorney could be held liable for his own policy of issuing misdemeanor arrest warrants without a finding of probable cause by a neutral and detached magistrate in violation of the Fourth, Fifth, and Fourteenth Amendments. *Crane v. State of Tex.*, 759 F.2d 412, 414 (5th Cir.), *amended on denial of reh'g,* 766 F.2d 193 (5th Cir. 1985).[7] But, as other courts have recognized, *Crane* is entirely consistent with the general rule that prosecutors are properly viewed under Texas law as acting on behalf of the state when acting within their prosecutorial capacity. *Zinter v. Salvaggio*, No. SA-18-CV-00680-JKP, 2021 WL 1381231, at *4 (W.D. Tex. Apr. 12, 2021); *Esteves*, 106 F.3d at 678.

A prosecutor's determination of whom to call as a witness and evaluations of credibility generally falls within their prosecutorial capacity. *See Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997), *aff'd*, 158 F.3d 583 (5th Cir. 1998) (holding that a district attorney acted within his prosecutorial capacity "in refusing to allow a witness to testify before a Grand Jury"); *cf. Savage v. Maryland*, 896 F.3d 260, 270 (4th Cir. 2018) ("Decisions regarding witness testimony—which witnesses to call, whether potential witnesses are credible, and how to proceed

---

*Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999) (line breaks removed). Nonetheless, this Court need not entertain that long-winded analysis here. Whether the Eleventh Amendment will bar a suit against a Texas district attorney in her official capacity turns on whether the district attorney was acting within the scope of her prosecutorial capacity as an advocate for the state of Texas.
[7] Of note, the Fifth Circuit recently questioned the reasoning underlying *Crane* as far as it applies in the context of determining liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See generally Arnone v. Cnty. of Dallas Cnty., Texas*, 29 F.4th 262 (5th Cir. 2022).

Case 5:22-cv-01380-XR   Document 29   Filed 11/02/23   Page 8 of 14

in the face of credibility questions—are a core prosecutorial function, directly tied to the conduct of a criminal trial.").

Other district courts applying similar standards have reasoned that the Eleventh Amendment applies in the context of *Brady* lists. *See, e.g.*, *Neri v. Cnty. of Stanislaus Dist. Attorney's Off.*, No. 1:10-CV-823 AWI GSA, 2010 WL 3582575, at *9 (E.D. Cal. Sept. 9, 2010) (holding that a District Attorney's Office sued for the decision to place on officer on a *Brady* list and communicate that decision was entitled to Eleventh Amendment immunity); *Nazir v. County of Los Angeles*, No. CV 10-06546 SVW AGRX, 2011 WL 819081, at *8 (C.D. Cal. Mar. 2, 2011) (holding district attorney's office was a state actor when creating procedure to place police officers on *Brady* lists); *Harris v. Chelan Cnty. Sheriff's Dep't*, No. 2:17-CV-0137-JTR, 2019 WL 1923924, at *4 (E.D. Wash. Apr. 30, 2019) ("This Court joins the reasoning of the Courts in *Neri*, *Walters*, and *Nazir* in concluding that the action of placing Harris on a *Brady* list by Chelan County prosecuting attorney Doug Shae, on behalf of the Chelan County Prosecuting Attorney's Office, was performed on behalf of the state.")[8]

Here, Louis and Trevino were acting on behalf of the state when determining that Plaintiff should be placed on a *Brady* list and communicating their assessment to others. These actions constitute a prosecutor's credibility determinations and a prosecutor's decision on whom to call as

---

[8] Though this Court declines to address whether prosecutorial immunity applies here, most courts to have addressed the issue hold that actions such as those alleged here fall within the scope of prosecutorial immunity. *Savage v. Maryland*, 896 F.3d 260, 273 (4th Cir. 2018) ("Even if we were to categorize Oglesby's alleged actions—in particular, his communications with City officials about Savage's status—as "administrative" or "managerial," they would remain inextricably linked with the underlying assessment of Savage's credibility and discretionary judgment about how best to respond."); *San Agustin v. El Paso Cnty.*, No. 18-CV-02646-MEH, 2019 WL 4059167, at *16 (D. Colo. Aug. 28, 2019) ("Such [credibility] assessment, as well as refusing to use Plaintiff as a trial witness based on credibility and disclosing or communicating the decision not to use Plaintiff, constitute conduct that is 'directly connected to the judicial phase of the criminal process and thus protected by absolute immunity.'"); *Walters v. Cnty. of Maricopa, Ariz*, No. CV 04-1920-PHX NVW, 2006 WL 2456173, at *9 (D. Ariz. Aug. 22, 2006) ("The decision to place Walters on the *Brady* list and to communicate that decision, however, were acts for which these Defendants have absolute immunity."). *But see Martin v. Goldsmith*, No. 2:22-CV-226-PPS-APR, 2023 WL 3737048, at *6 (N.D. Ind. May 30, 2023) ("Directly sharing this information with a current or potential employer seems even one more step removed from a purely prosecutorial function.").

a witness in future litigation. Louis's credibility assessments and Louis and Trevino's disclosure of them prior to any immediate litigation is critical to Louis' ability to prosecute actions involving Plaintiff as a law enforcement officer in the future and thus to her enforcement of state penal laws. For this reason, Louis and Trevino's alleged actions of informing WCSD and TSCRA, even if the *Brady* list assessment was incorrect, fall within the prosecutorial capacity.

Similarly, Trevino was acting on behalf of the state when informing Louis of Plaintiff's applications to TSCRA.[9] That is, Trevino took actions to assist the prosecutor's office in assessing a potential witness's credibility in prospective litigation. Therefore, Trevino was clearly acting within the scope of the prosecutorial capacity in doing so and thus acting on behalf of the state.[10]

Thus, the Court holds that Louis and Trevino are entitled to Eleventh Amendment immunity in accessing the alleged *Brady* material and informing WCSD and TSCRA of the alleged *Brady* material. Plaintiff's claims against Louis and Trevino in their official capacities and against the District Attorney's Office are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.[11]

## II.     Rule 12(b)(6) – Section 1983 Claims

### a. *Fourteenth Amendment Due Process Violations*

Defendants argue that Plaintiff's claim for violations of his Fourteenth Amendment due process rights fails as a matter of law because "[n]either harm to reputation nor the consequent

---

[9] Defendants assert Trevino is entitled to Eleventh Amendment immunity as a staff member of the District Attorney's Office. ECF No. 17 at 3.

[10] The Court recognizes that prospective relief may be available against state officials sued in their official capacities. *See Ex parte Young*, 209 U.S. 123 (1908). However, because neither party addressed *Ex parte Young* or any potentially related issues in briefing this motion, the Court declines to address the matter here.

[11] "[A] dismissal based on Eleventh Amendment immunity takes place before weighing the merits, and thus cannot result in dismissal with prejudice." *Stevens v. Hayes*, No. A-11-CA-550 LY, 2012 WL 2572790, at *8 (W.D. Tex. July 2, 2012), *subsequently aff'd*, 535 F. App'x 358 (5th Cir. 2013) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

impairment of future employment opportunities are constitutionally cognizable injuries." ECF No. 17 at 6–7 (citing *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996)). The Court agrees.[12]

Generally, a plaintiff cannot plead a cognizable claim for defamation under § 1983. *See Paul v. Davis*, 424 U.S. 693, 711–12 (1976). Rather, a plaintiff seeking to hold a government official liable under § 1983 for an allegedly defamatory statement that deprived the plaintiff of procedural due process—as Plaintiff seeks to do here—must meet the "stigma plus infringement" test. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991). Under this test, a plaintiff (1) must allege that the stigma was caused by concrete, false factual representations or assertations by the state actor, and (2) must allege that "the state sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or guaranteed by one of the provisions of the Bill of Rights that has been 'incorporated.'" *Id.* at 701–02.

Even assuming Plaintiff meets the first prong of the *Paul* framework, Plaintiff fails at the second. First, Plaintiff fails to allege a protected liberty interest protected under the Constitution. As the Fifth Circuit has observed, reputational harm and the impairment of future employment opportunities are not cognizable injuries under the Constitution. *Vander Zee*, 73 F.3d at 1369; *Thinkstream, Inc. v. Adams*, 251 F. App'x 282, 284 (5th Cir. 2007) (per curiam) ("But the loss of future employment opportunities does not typically qualify as the kind of 'tangible interest' that *Paul* contemplated."); *see also Perry v. F.B.I.*, 781 F.2d 1294, 1302 (7th Cir. 1986) ("[A] liberty interest is not implicated merely by a reduction in an individual's attractiveness to potential

---

[12] In his response, Plaintiff argues that "an individual's 'right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the "liberty" and "property" concepts of the Fifth Amendment.'" ECF No. 24 at 6 (citing *Vander Zee*, 73 F.3d at 1370). The FAC, however, does not assert any cause of action premised on violations of the Fifth Amendment. Moreover, as Defendants point out, "the Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000); *see also Borden v. Fort Bend Cnty., Texas*, No. CV H-19-551, 2019 WL 6344473, at *4 (S.D. Tex. Nov. 27, 2019) ("The Fifth Amendment applies only to violations of constitutional rights by the United States or federal actors[.]"). Because they are not federal actors, Defendants cannot be liable for the alleged violations of the Fifth Amendment here.

employers."); *cf. Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1558 (10th Cir. 1993) ("[P]laintiffs must allege and present evidence of present harm to established business relationships.").

Indeed, Plaintiff fails to allege anything more than loss of prospective employment opportunities with either WCSD or TSCRA. While Plaintiff alleges that he accepted a position with WCSD, he also acknowledges that "Sheriff Stewart subsequently advised McDonald that he would not he hired after all." FAC ¶¶ 10, 12. Similarly, Plaintiff alleges that he "was practically hired," but after conducting his background check, TSCRA revoked his offer of employment. *Id.* ¶¶ 15–16. In other words, Plaintiff had a prospect of future employment with both WCSD and TSCRA, but he was not actually employed by either entity. At a base level, Plaintiff's alleged harm stems from harm to his reputation rather than the deprivation of any protected liberty interest. *Siegert v. Gilley*, 500 U.S. 226, 234 (1991) ("But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a [federal civil rights] action .").[13]

Even if these opportunities constitute something more concrete, Defendants' conduct amounted to one-off interference with two potential employers. This is not enough to make Defendants' actions a deprivation of due process rights. *Cf. Thinkstream*, 251 F. App'x at 284 ("The loss of the specific contract that Thinkstream, Inc. had with the State of Louisiana is more tangible in nature, but the loss of isolated contracts does not of itself entail a significant impairment to operating a business.").[14]

---

[13] The Court also notes that Plaintiff's FAC specifically alleges that Plaintiff is currently a reserve Deputy/Investigator in Live Oak and Atascosa counties.

[14] The First Circuit has held a law enforcement officer simply "does not have a protected liberty or property interest in the prosecutor's charging decisions, decisions regarding what materials are disclosed to criminal defendants during discovery, or decisions as to who to call to testify at trial. All of these decisions involve the prosecutor's discretionary judgment and independence, which are protected from interference." *Roe v. Lynch*, 997 F.3d 80, 85 (1st Cir. 2021).

Second, Plaintiff fails to allege a protected property interest in his prospective employment with either WCSD or TSCRA.

> To enjoy a property interest in employment, an employee must "have a legitimate claim of entitlement" created and defined "by existing rules or understandings that stem from an independent source such as state law ...." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In Texas, there exists a presumption that employment is at-will, unless that relationship has been expressly altered by contract or by express rules or policies limiting the conditions under which an employee may be terminated. *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir.2003) (citations omitted). "[A]bsent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998).

*Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). Further, "[a] protected property interest in employment begins only where an employee has an express or implied right to continued employment, but no such property interest is created by the Constitution." *Knowles v. United States*, No. 4:07-CV-578, 2009 WL 2882956, at *7 (E.D. Tex. Aug. 31, 2009) (citing *White v. Miss. State Oil & Gas Bd.*, 650 F.2d 540, 541 (5th Cir. 1981)). Even assuming that Plaintiff had been hired, his employment would have been presumptively at will under Texas law and thus would have had no right to continued employment. Plaintiff has not alleged otherwise. *Id.* Thus, Plaintiff failed to allege that he had any protected property interest in his employment with either WCSD or TSCRA.

Because Plaintiff has neither alleged that Defendants violated a protected liberty interest nor a protected property interest, Plaintiff's § 1983 due process claims are **DISMISSED WITH PREJUDICE** as to Louis and Trevino in their individual capacities.

### b. *Fourteenth Amendment Equal Protection Violations*

Defendants assert that the FAC fails to state a claim for a violation of Plaintiff's equal protection rights under the Fourteenth Amendment because Plaintiff does not identify any

discriminatory treatment, identify himself as a member of a protected class, or allege that he was intentionally treated differently than any similarly situated comparator. *Id*. Plaintiff responds that he has adequately pled a proper equal protection claim of one, emphasizing that Defendants' actions stemmed from an "illegitimate desire to get him." *See* ECF No. 22 at 7.

While the Equal Protection Clause has typically been used to prevent discrimination against those in a protected class, such as race, sex, alienage, or some other immutable characteristic, *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999), "class of one" claims are recognized under Fourteenth Amendment case law. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To proceed in such actions, a plaintiff must allege that he was intentionally treated differently from others who were similarly situated and that there was no rational basis for this treatment. *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 233 (5th Cir. 2012).

Here, Plaintiff makes only conclusory allegations that "Defendants Louis and Trevino intentionally treated Plaintiff McDonald differently from other similarly situated law enforcement officers," and that "[t]here is no rational basis for the difference in treatment." FAC ¶¶ 27–28. These statements amount to nothing more than "threadbare recitals of the elements" and, accordingly, are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678; *see Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018) ("An allegation that others are treated differently, without more, is merely a legal conclusion that we are not required to credit."). To proceed, Plaintiff must allege specific facts showing that he was treated differently from similarly situated law enforcement officers—i.e., other officers seeking employment after being acquitted of similar charges brought by Defendants—and that there was no rational basis for the difference in this treatment. *See Willowbrook*, 528 U.S. at 564.

Therefore, Plaintiff's § 1983 claim for deprivation of his Fourteenth Amendment equal protection rights is **DISMISSED WITHOUT PREJUDICE** as to Louis and Trevino in their individual capacities.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's FAC (ECF No. 17) is **GRANTED**.

Plaintiff's § 1983 claims against Louis and Trevino in their official capacities and the District Attorney's Office for violations of his Fourteenth Amendment due process and equal protections rights are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

Plaintiff's § 1983 claims against Louis and Trevino in their individual capacities for violations of his Fourteenth Amendment due process rights are **DISMISSED WITH PREJUDICE**.

Plaintiff's § 1983 claims against Louis and Trevino in their individual capacities for violations of his Fourteenth Amendment equal protection rights are **DISMISSED WITHOUT PREJUDICE**.

Should Plaintiff be able to amend his pleadings in good faith to properly state a claim against Defendants, Plaintiff is granted leave to do so within fourteen (14) days of this Order.

It is so **ORDERED**.

**SIGNED** this 2nd day of November, 2023.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE